GEORGE K. HALL,

*vs.*

DAVID GREENLY, ELISHA E. GREENLY, JOHN P. GREENLY, and ELISHA EVANS.

*Sussex, July T.* 1824.

A voluntary deed was made by a father conveying to his two sons, who were minors, certain land, which was afterwards sold by the sheriff in execution of judgments against the father, recovered subsequently to the deed but for debts contracted prior to it. Under the special circumstances of the case, the Court refused to set aside the deed for the relief of a purchaser of the land deriving title under the sheriff's sale.

In cases of this nature the Court, in granting relief, will only set aside the deed impeached. It will not decree a delivery of possession to the purchaser, nor an account of the rents and profits.

BILL TO SET ASIDE A CONVEYANCE FOR FRAUD ON CREDITORS.—This bill was filed under the following circumstances. David Greenly, by deed dated the 19th of January, 1819, conveyed certain real estate, of which he was seized, to his two sons, Elisha E. Greenly and John P. Greenly, their heirs and assigns, for the consideration, as expressed in the deed, " of the sum of $1000.00, good and " lawful money of the State of Delaware, to him in hand

" paid by Elisha Evans for the said Elisha E. Greenly and " John P. Greenly, and the regard he had for them, and " many other good reasons known only to himself," the said David Greenly. By the terms of the deed there was reserved to the said David Greenly the use of the land conveyed, as long as he should occupy it himself; with this proviso, that he should raise and school his children without any charge or expense to them. The grantees in the deed were, at the date of it, infants under the age of twenty-one years. The grantor, David Greenly, continued after the conveyance to reside on the land as before, with his family, of whom the grantees, his sons, formed a part.

At the time of making the conveyance before mentioned, David Greenly was indebted to sundry persons. Among others, he was indebted to John Houston in nine single bills, dated the 15th of August, 1817, amounting in the whole to about $267. Judgments were recovered by Houston on these single bills before a Justice of the Peace, after which he assigned four of the judgments to James Huffington; and for the others Greenly gave to Houston a single bill, dated the 17th of October, 1820, for the sum of $174.90, with a warrant of attorney for the confession of judgment thereto annexed. A judgment on this single bill to John Houston was entered in the Court of Common Pleas. At the same time James Huffington took from Greenly, for the four judgments before the Justice which Houston had assigned to him, a single bill for the sum of $133.16, with a warrant of attorney for the confession of judgment; and a judgment on this single bill to James Huffington was also entered in the Court of Common Pleas. At the time of making the before mentioned conveyance, David Greenly was also indebted to Edward Huffington and William Huffington, in a promissory note for $200.00, dated the 23rd of December, 1818, on which note a judgment was recovered against David Greenly in the Court of Common Pleas, at the October

Term, 1820, for $234.00. The latter judgment was for the use of Daniel Cannon. Writs of *fieri facias* were issued upon the judgment of James Huffington against Greenly, and upon the judgment of Edward and William Huffington for the use of Cannon. The land conveyed by the before mentioned deed was levied upon, and afterwards on the 4th of March, 1823, under further process of execution, was sold by the sheriff at public sale, and purchased by David Robinson for the sum of $510.00 The sale, being returned to the Court, at the April Term, 1823, was confirmed, and a deed was executed by the sheriff conveying to Robinson the interest of Greenly in the land. Afterwards David Robinson, by deed dated the 6th of June, 1823, conveyed the premises to the complainant.

The bill set forth the facts above stated and alleged that the deed from Greenly to his two sons, who were minors, was a voluntary conveyance, without any valuable consideration, and was fraudulent and void as against the creditors of Greenly, and as against David Robinson and the complainant, who were *bona fide* purchasers of the premises, under David Greenly, for a valuable consideration. The bill further alleged that the execution and existence of the deed were concealed from the creditors for the purpose of defrauding them ; that the said John Houston and James Huffington had released the judgments recovered before the Justice of the Peace for the express purpose of obtaining such judgments as would be a lien upon the land of David Greenly; and that the said Greenly had continued to hold the land, after the conveyance of the same to his two sons, for his own use and benefit. The bill charged the defendant, Elisha Evans, who was Greenly's father-in-law and by whom the deed was drawn, to be a confederate in the fraud. The prayer of the bill was that the deed should be declared void and be decreed to be delivered up to the complainant to be cancelled ; that the grantees therein, Elisha E. Greenly and John P.

Greenly, might be compelled to execute and deliver to the complainant a conveyance of the land in controversy, and that possession thereof might be delivered to the complainant; that until such delivery should be made a receiver of the rents and profits might be appointed by the Court; that the defendant Greenly might be restrained from assigning a lease he had made of part of the premises to one James Walker; and that the defendants might be decreed to come to an account with the complainant for the rents and profits of said land and premises; and for further relief.

The answer of the defendants admitted the conveyance by David Greenly to his two minor sons, Elisha P. Greenly and John P. Greenly, of the lands and premises in controversy, at the time and in the manner alleged in the bill. It also admitted the recovery of the several judgments against David Greenly,( as set forth in the bill,) by John Houston, by James Huffington, and by Edward and William Huffington, for the use of Daniel Cannon; and that writs of *fieri facias* were issued upon the judgments of James Huffington and of Edward and William Huffington for the use of Daniel Cannon,—in execution of which writs the lands and premises conveyed by David Greenly to his two sons had been levied upon and sold, and afterwards conveyed by the sheriff to David Robinson; also, that the same lands and premises were sold and conveyed by Robinson to the complainant. The answer alleged, by way of defence, that David Greenly had been a weak-minded and illiterate man, addicted to habits of intemperance, easy to be imposed upon, and every way unfit for business; that he had contracted sundry debts, without any adequate compensation, to persons who had taken advantage of his weakness; that his affairs having become much involved, and he being unfit to manage them, the defendant, Elisha Evans, who was Greenly's father-in-law, had been obliged to devote much time and labor, and to

expend considerable sums of money, on Greenly's account; that he had determined to make this a ground for requiring, on the part of Greenly, a fair provision for his children, so that they might not be reduced by his incompetence to beggary; that, in satisfaction of the said claim of Elisha Evans, the defendant Greenly, together with his wife, by a deed dated the 10th of November, 1817, conveyed to Elisha Evans and his wife, the lands and premises in controversy, to hold the same for their joint lives and the life of the survivor; that immediately after such conveyance Elisha Evans went into and continued in possession of the premises, lived upon them, and was assessed and paid the taxes for them : that the same were known and considered in the neighborhood as having been purchased by Evans ; that some time after this, about the month of January, 1819, Evans, at the instance of Greenly's wife, who was then sick, proposed to Greenly that he, Evans, together with his wife, would release the interest which had previously been conveyed to them in the lands in controversy, *provided*, that he, Greenly, would thereupon settle the said land upon his children ; that this proposition was assented to by Greenly, and as the deed previously made to Evans had not been recorded, it was determined to carry the arrangement into effect by a deed directly from Greenly to the children,—in pursuance of which agreement the deed from Greenly to his children, referred to in the bill, was executed.　The answer further alleged, that although the deeds before mentioned were not recorded, their existence and objects were, immediately after their execution, known to the persons interested in the notes, bills, judgments and executions, the sale by the sheriff and the deed from him, mentioned and set forth in the bill ; that the lands were sold by the sheriff at a very great sacrifice ; that Robinson, the purchaser, expressed his willingness at the time of the purchase to hold them for the payment of his debt out of the rents and profits and afterwards to re-convey them to

Greenly; that the complainant, to whom Robinson had conveyed his interest in the lands, purchased them subject to an agreement by Robinson to refund the purchase money to the complainant, should his title under Robinson's deed prove to be defective.   The answer further alleged that the single bill of Edward and William Huffington, to satisfy the judgment upon which the sheriff's sale was in part made, was fraudulently obtained from Greenly, he having given it as the consideration for a tract of land sold to him by one Isaac Green, which was afterwards taken in execution and sold for the debts of Green, notwithstanding that the Huffingtons had assured Greenly at the time he purchased the said tract that there were no liens against it. The answer did not impeach the judgment of James Huffington, the other judgment in execution of which the lands had been sold by the sheriff; but it alleged that James Houston was informed by Elisha Evans of the arrangement for securing the land in controversy to Greenly's children, and that he expressed his approval of it and advised that it should be made.   The answer submitted that under all the circumstances, considering the ignorance and incapacity of Greenly for business, the advantages which had been taken of his condition, and the great sacrifice made of the property by the sheriff's sale, the Court ought not to interfere to deprive the defendants, the sons of Greenly, of their legal right; or that if the Court should see fit to declare the deed from Greenly to his sons to be void, such decree ought to be only upon condition that the lands should be again exposed to sale, free from the embarrassments of the former sale and with a better opportunity to all concerned to protect their respective interests in the premises.   And the answer utterly denied that the deed from Greenly to his sons was a voluntary deed, or that it was made with any fraudulent purpose whatever; but, on the contrary, alleged that its object was solely to protect Greenly from imposition and

fraud practiced by others upon his ignorance and incapacity,—in which practices the answer charged that the complainant had been himself concerned.

Issues were joined and depositions taken by both parties. The cause came before the Chancellor, at the July Term, 1824, for a hearing upon the bill, answer, exhibits and depositions.

*Robinson* and *Cooper*, for the complainant.

This was a voluntary conveyance by David Greenly to his children, he being at the time in failing circumstances and indebted to sundry persons, among whom were the Huffingtons, the creditors under whose judgments the present complainant derives title. Such a conveyance is void upon settled principles. A voluntary conveyance, made by a party at the time indebted, is presumed to be fraudulent as against the previously existing creditors. Even subsequent creditors may impeach such a settlement on account of prior indebtedness. 3 *Johns. Ch. R.* 506 : 2 *Johns. Ch. R.* 48 : 1 *Atk.* 93 : 2 *Bro. Ch. R.* 90 : 2 *Ves. Sr.* 11 : 5 *Ves. Jr.* 387 : 3 *P. Wms.* 288 : 2 *Ves. Sr.* 519– 520 : *Cowper*, 434.

The purchaser under a judgment is entitled to stand in the place of the judgment creditor against a fraudulent conveyance. The statute against fraudulent conveyancing protects the judgment creditor, and the purchaser is protected by the judgment. 2 *Johns. Ch. R.* 49. It matters not whether the complainant, or those under whom he claims, had notice. A voluntary conveyance is fraudulent and void against a purchaser, though he had notice of it. *Sugden on Vendors,* 464 : 2 *Bro. Ch. R.* 148 : 4 *B.&P.* 332 : 2 *Taunt.* 82 : 9 *East* 59, 63 : 1 *Johns. Ch. R.* 270. The case does not rest on presumptive fraud only. There are strong circumstances showing actual fraud, i. e. a deliberate purpose to defeat creditors. There is no proof that

Evans paid any consideration. He was always embarrassed and not able to pay. The deed on its face bears evidence of its design. Besides the money consideration ($1,000.00) it purports to be made upon considerations best known to the grantor. It contains the unusual clause reserving to him a continued possession, provided he should raise his own children. The deed was followed by no change of possession. It was not recorded for two or three years, but was kept in Evans' pocket. All these circumstances show it to have been a contrivance by which Greenly should continue in possession, take the profits, and prevent his creditors from selling.

With respect to the alleged want of consideration for the note given to the Huffingtons and on which a judgment against Greenly was recovered, being one of the judgments under which the land was sold, it does not appear that Greenly ever complained of this debt. He filed no bill for relief against it, but permitted the land to be sold under the judgment. He cannot now, on that ground, impeach the title of a *bona fide* purchaser under the sale. With respect to the allegation that James Huffington, the other judgment creditor, advised this conveyance, there is no proof of it. His testimony is to the contrary.

*Wells*, for the defendants.

This case is addressed to the sound discretion of the Court, to be determined by considering all its circumstances. The general principle that governs it is, that a party seeking to set aside a voluntary conveyance must show an equity entitling him to call upon the Court for relief. Now this land was sold to satisfy two debts. One of these was the note to the Huffingtons, given by Greenly for the lot purchased from Jesse Green. This lot was afterwards sold under a prior judgment against Green, so that the consideration for the note failed. The transaction was a fraud, with which the Huffingtons were connected.

36

They could have no equity to set aside the deed in controversy, and none can be derived under them. The other judgment creditor, for whose debt the land was sold, advised and consented to the settlement upon Greenly's children. So the answer of the defendants alleges and there is no testimony to controvert it. No equity then to avoid this deed can be set up under James Huffington. But again, even waiving our objection that Huffington advised this conveyance and conceding that he could have enforced his judgment against the land, still it does not appear that the land could have been condemned and sold under his judgment alone, excluding the fraudulent debt of the two Huffingtons. Now, whatever objections would lie against the equity of the judgment creditors to be relieved against this deed, they are good against the purchaser ; for if the purchaser is to be protected under the rights of the creditors he must be liable to their disabilities and be affected by their want of equity.

So far, I have treated this deed as if it were a voluntary conveyance. But it was not such. There was a prior deed from Greenly to Evans and wife for a valuable consideration from Evans. That was a *bona fide* transaction. By that deed Evans and wife acquired a life estate in the land, which estate they surrendered in consideration of the settlement made upon the children of Greenly.

RIDGELY, CHANCELLOR.—If I intended to make a final decision as to the rights of the parties in this cause, I would minutely examine and discuss the exhibits, proofs and arguments of the counsel respectively, and deliver my opinion upon the various matters which have been given in evidence ; but I shall not do so, because I do not mean to prejudice either party by any thing which I shall say, except so far as it may be necessary to explain the course which I am about to pursue.

This is a kind of ejectment cause. The complainant prays that the indenture made by David Greenly to

Elisha E. Greenly and John P. Greenly, his sons, on the 19th of January, 1819, may be declared fraudulent and void, and may be cancelled and delivered up to the complainant; and that the grantees in that deed may be compelled to convey said land to the complainant; and that the said land may be delivered to complainant; and in the meantime that a receiver be appointed to receive the rents and profits; and that said Greenly may be restrained from assigning a lease made to James Walker; and that the defendants may be decreed to account for the rents and profits; and for general relief.

Now the utmost length that this Court would go in granting relief would be merely to act on the deed of the 19th of January, 1819. For as to the possession, and the rents and profits, that is, the mesne profits, the complainant has the same remedy which all persons have where land is withheld from the proper owner. Such owner may, at law, recover the possession; and in an action for the mesne profits he may recover the rents and profits.

And as to the deed,—if it is fraudulent, the complainant can recover at law, if he is entitled to recover; for fraud, in such a case as this, is as much within the jurisdiction of a court of law as within the jurisdiction of this Court. This is one of my reasons for not deciding the matter here.

Another objection to relief is, that the debts of the Huffingtons, and of Isaac Green, do not present a case so pure as to entitle them to favor in this Court. They essentially operated in the sale of the land.

I do not intend to justify the deed made by Greenly to his sons. But, under all the circumstances, the complainant must be left to his remedy at law. There, he may have a complete relief, according to the merits of his case. Here, it could be only partial; for neither the possession nor an account for the rents and profits could be decreed him.

The bill must be dismissed, without prejudice to either party at law, and each party must pay his own costs.